## ROBERT B. LUNDY *v.* THE STATE.

1. CRIMINAL LAW—CONTINUANCE.—The rule in regard to granting or refusing a continuance, is, that such application is addressed to the sound discretion of the court; and it is only when this discretion has been manifestly abused, that the action of the court below can be assigned for error.

2. SAME—SAME.—The application for a continuance, was based in legal effect upon the absence of a witness, who was desired only for the purpose of impeaching a wit-

ness for the state, in this, that the latter had said that, if he could not convict the accused by telling the truth, he would do it otherwise. *Held :* A continuance was properly refused.

8. SAME—MOTION FOR NEW TRIAL—SURPRISE—CASE AT BAR.—A motion for a new trial was based upon the following affidavit of counsel: "When the case was called, he understood the sheriff to report that all the witnesses for the defense, for whom he held subpœnas were present, but one, and thereupon went into the trial of said cause. After the testimony had been adduced on the part of the state, affiadavit was made, that the prisoner was informed by the sheriff, that only two witnesses were present, and they were unimportant. The counsel was thus surprised, and not prepared with the expected testimony in said cause." *Held :* The motion for a new trial was properly overruled.

Error to the circuit court of Hinds county. BROWN, J.

The facts appear in the opinion of the court,

*G. A. Smythe,* for plaintiff in error.

On the point of the application for a continuance, cited Browning v. the State, 30 Miss., 454 ; Arch. Cr. Pr. and Pl., 566, *et seq.* and notes ; Ogle v. the State, 33 Miss., 363.

On the point of the motion for a new trial, cited 2 Graham & Waterman on New Trials. 39 *et seq.* and notes ; 1 ib., 209 ; 3 ib., 936 and notes.

He commented on the facts, and applied certain principles contained in the above authorities.

*Oliver Clifton,* on same side.

We appeal to the discretion of the court, as to whether the plaintiff in error has had such an impartial and full investigation of the circumstances connected with the crime wherewith he has been charged, and of which he has been convicted, as is contemplated by section 7, of the bill of rights.

The special attention of the court is called to the affidavit of the attorney of the defendant, in the court below, wherein he states that he was taken " by surprise" upon the trial of said cause," etc. With this affidavit in view, it would be cruel to allow the sentence of the circuit court to be executed.

We are willing to admit that, where parties are represented by attorneys, their acts of omission, as well as commission, must bind, and no principal would be allowed to avoid an agreement because of the mistake of his agent. Nor, under

ordinary circumstances, would a defendant be heard to ask for the revision and reversal of a judgment upon the grounds set forth in the affidavit of the attorney in the inferior court. A rule of law which would permit parties plaintiff or defendant to complain of the action of their attorneys, by writ of error to this court, and thereby obtain a reversal of the judgment of an inferior court, would be the source of endless litigation in civil cases. But, in a case like that now before this court, bearing in mind the fact that no injury to the state or any one else can arise from a reversal of the circuit court judgment and a new trial, we do most earnestly beseech this honorable court to interpose and give to plaintiff in error the advantage of a full investigation of his supposed criminal conduct. Legal technicalities must not be used for the oppression of men.

It makes no difference that the proceedings, legally viewed, have been regular, and that the record evidences no fatal defects. It is enough for this court to know that a citizen of the state, charged with the commission of crime, has been convicted and sentenced, without having had such a trial as is guaranteed to each and every one of us by the constitution; and such a trial as each and every one of us would expect and demand, being placed under like circumstances.

The honorable supreme court is removed from the predjudices which oftentimes unavoidably creep into and influence the proceedings in the inferior courts. What it can know about this case must be gleaned from the record, and that record is not such as should sustain the sentence now asked to be reversed.

The plaintiff in error is in the custody of the sheriff of Hinds county, secure from any chance of escape. If he be guilty, it is certainly no very great lienency in this court to allow him a new trial at the January term of the circuit court. His sentence is nothing more than confinement, and this he is undergoing.

We ask this court to aid us in making a record in this case which will not bear upon its face the faintest shadow of cru-

elty and oppression, but will show itself to be a clear vindication of the spirit as well as the letter of the law.

*J. S. Morris,* attorney-general, for the state.

*W. T. Deason,* on same side.

It is well settled, that a refusal to grant a continuance is no ground of error. Marshall v. Fulgam, 4 How., 216; Muirhead v. Muirhead, 6 S. & M., 415; Babcock v. Scott, 1 How., 100; Berry v. Hale, 1 How., 315. An application for a continuance is addressed to the discretion of the court, and it is not in the power of the appellate court to revise it when assigned as error. Bohr v. Steamboat Baton Rouge, 7 S. & M., 715; McDaniel v. State, 8 ib., 401; Lindsay v. State, 15 Ala., 43; State v. Duncan, 6 Iredell, 98; Green v. State, 13 Mo., 382.

The second error assigned is the refusal of the court below to grant a new trial, and assign the same reasons as in their motion for a continuance, to-wit: "newly discovered evidence," which was intended to discredit the testimony of a certain witness on the part of the state. And if these grounds were insufficient to sustain the motion for a continuance, they would certainly not justify the court in granting a new trial. The discovery of new evidence, when that evidence is intended to impeach or discredit a former witness, is no ground for a new trial. State v. Carr, 1 Foster, 166; Bland v. State, 2 Carter, 608; Herbert v. State, 7 Texas, 69; Leving v. State, 13 Geo., 513; State v. Harding, 2 Bay., 267; Deer v. State, 14 Mo., 348; Thompson's case, 8 Gratt., 637.

TARBELL, J.:

At the September term, 1870, of the circuit court of the first district of Hinds county, the plaintiff in error was indicted, tried, and convicted of a charge of assault, with intent to kill, one Wiley Covington.

The indictment was presented and filed September 12th, and the accused was arraigned and pleaded not guilty on the same day. On the 23d day of the same month, a motion

for the continuance of the cause was made by defendant, upon an affidavit of the said Robert B. Lundy, stating that " he is unable and cannot safely go to trial in consequence of the absence of Ira Curtis, who has not been regularly subpœnaed to this term of the court, as a witness in his behalf. Affiant states that said Curtis is a very material witness in his behalf; that said witness is not absent by his procurement or consent; that said witness is within the jurisdiction of this court; that a subpœna was regularly sued out, and that affiant does not know the reason or cause of said witness' absence; that affiant expects to prove by said witness that William E. Hendricks, the principal and most important witness subpœaned for the state, has used a threat against said affiant, saying that if he could not convict said affiant by telling the truth he would otherwise, meaning thereby, that he, the said William E. Hendricks, would swear falsely against said affiant.

The affidavit further set forth the absence of a brother of affiant, for whom no subpœna had been issued, but whose presence was relied upon by letter. The application for a continuance was denied, and the trial proceeded on the same day, resulting in a verdict of guilty. On the day following, a motion for a new trial was made upon the ground stated in an affidavit of counsel for the accused, and because the verdict was contrary to the law and the evidence. The affidavit of counsel states that " he was taken by surprise upon the trial of said cause ; that when the same was called he understood the sheriff to report that all the witnesses for the defense, for whom subpœnas had been issued, were present, but one, and therefore, went into the trial of said cause. After the testimony had been adduced on the part of the state, affiant was informed by the sheriff that only two witneses were present, and those two not important witnesses to the defense ; that affiant had misunderstood said sheriff, and was thereby surprised and not prepared with the expected testimony in said cause."

The testimony in the case is very brief. Wm. E. Hen-

dricks testified that he went into the room where defendant, Wiley Covington, Henry Lundy, and others were, about fifteen minutes before the shooting. Saw defendant loading a double barrel shot-gun with buckshot. Defendant said the next d—d nigger that gave him any sauce, or jaw, or impudence, should have the contents of said gun. Defendant put the gun on the bed in the room. Wiley Covington, who was a half crazy man, unable to walk at the time, was sitting, smoking his pipe, when defendant made these remarks. Covington took his pipe out of his mouth, and used a vulgar and contemptuous expression. Defendant went to the bed, took up the gun and pointed it at Covington. Henry Lundy stepped forward and threw up the gun, telling his brother not to shoot. Defendant again levelled at Covington, when witness knocked the gun downward and it went off, and part of the contents went into the leg of Covington. Defendant afterwards said to witness, if it had not been for witness he would have killed Covington.

This witness said he was prejudiced against defendant, but had no such feeling as would prevent his telling the truth. Powhattan Hill, a witness for defendant, testified that Covington told witness, shortly after the shooting, that if it had not been for Hendricks, defendant would not have shot him ; he further testified, that Covington said he thought defendant would not have shot him if Hendricks had not persuaded him to do so.

And this was all the evidence in the cause. No exceptions or instructions appear on either side. A writ of error was granted without the usual bond, or the oath of the accused of his inability to give it.

The following constitute the assignment of errors :

1st. That the court erred in not granting a continuance upon affidavit of the accused.

2d. The court erred in overruling the motion for a new trial upon the affidavit of counsel.

The evidence was amply sufficient to justify the verdict. The grounds of reversal are, the denial of a continuance and the refusal to grant a new trial.

The application for a continuance was based, in legal effect, upon the absence of a witness, who was desired only for the purpose of impeaching a witness for the state in this, that the latter had said that if he could not convict the accused by telling the truth, he would otherwise.

The rule in regard to granting and refusing a continuance is, that such applications are addressed to the sound discretion of the court; and it is only when this discretion has been manifestly abused, that the action of the court below can be assigned for error. Ogle v. State, 33 Miss., 383.

The accused had from the 12th to the 23d of September, in which to prepare for trial. No diligence is shown, except the issuance of a subpœna. The witness is stated to have been in the jurisdiction of the court, but his residence or whereabouts, is not given. No effort was made to continue the case to another day of the same term, to enable the witness to be secured.

It appears from the record, that there were "other persons" present at the time of the shooting, but they were not examined as witnesses on the trial. Why not, does not appear. Neither was the witness Hendricks asked as to the threats imputed to him.

The application for a continuance in Ogle v. the State, 33 Miss., 383, appealed much more strongly to the favor of the court than the case at bar; yet, in that case, the continuance was refused, and the refusal was sustained by the high court of errors and appeals. That was a trial involving the life of the accused, and he had been convicted of manslaughter in the first degree. Subpœnas had been returned not executed. The absent witnesses were expected to prove that the accused and deceased were on friendly terms up to the time of killing, and that the latter was very quarrelsome in his disposition. Judge Fisher, in delivering the opinion of the court, says, after stating the rule above quoted: " But even under a more liberal application of the rule in the case at bar, we feel no hesitation in saying that the court below committed no error in refusing the continuance. Conceding that

proper diligence had been used to compel the attendance of
the witnesses, their testimony could not have varied the
result.   Admitting the truth of the statements of the affida-
vit, and giving to the facts the greatest weight they were
entitled in favor of the accused, a mere doubt as to the ques-
tion of malice, could, at most, have been created on the
minds of the jury." With the change of a word or two,
these remarks of the court in that case would most perfectly
apply to this. We can see no error or injustice in this action
of the circuit court.

Upon the motion for a new trial, the refusal to grant the
continuance was again before the circuit judge for review, in
the light of the evidence elicited on the trial, when he had
an opportunity to reconsider his former action with the whole
case before him.   The circuit judge, acting with that sound
judicial discretion with which he is invested, refused a new
trial.   The non-examination of other persons present at the
shooting, induces the belief that the very best was done for
the accused on the trial, and in the management of the cause,
which the circumstances admitted of.

The presence of the absent witness was desired to attack a
witness for the state on account of alleged threats.   The
value of such a witness to the accused, and the probable
influence of the testimony in the result of the cause, the judge
of the trial was fully competent to determine.

Neglect is not imputed either to the accused or to his
counsel in any stage of this case, but we apprehend suitable
diligence would have secured the presence of the witness, or
service of subpœna upon him, while the claim of surprise
cannot be given much weight in view of the previous affida-
vit of the client.   It is not the case of surprise by the intro-
duction of unexpected testimony, nor the case of newly discov-
ered evidence subsequent to the trial.   The case at bar is not
equal in merit or dignity to either.   Indeed, being based upon
the absence of a witness, whose testimony was desired only to
impeach another witness, it would seem to possess less claim
upon the court than any of the class of cases referred to.

We are unable to perceive any error on the part of the circuit court, or that any injustice has been done. But, on the contrary the record impresses us with the conviction that justice has been impartially administered in this case. So believing, the judgment is affirmed. The accused was sentenced to confinement in the penitentiary at Jackson for the period of eight years from the fifth day of September, 1870, and is now in jail awaiting the action of this court. The period of confinement in the penitentiary, of the accused is here fixed to commence with the time fixed by the court below.