## THOMAS S. PARKER *v*. THE STATE.

1. CRIMINAL LAW. *Continuances. When refused.*
   This court will not reverse a judgment and award a new trial because of the refusal of the Circuit Court to grant a continuance to the defendant on account of the absence of a witness, if it appears that several witnesses, whose testimony concurred in the main, testified to all of the facts concerning which the absent witness could have testified. And, in reviewing the action of the court below, this court will give weight to the fact that the refusal to grant the continuance, as well as all other matters developed in the trial, were considered by that court, on a motion for a new trial.

2. SAME. *Manslaughter. Instructions.*
   Where a defendant, although indicted for murder, is convicted of manslaughter, the judgment will not be reversed and a new trial awarded because the court refused to give instructions defining murder.

3. PRACTICE. *Instructions not repeated.*
   The Circuit Court is not required to give instructions repeating principles of law already given in charge to the jury.

4. CRIMINAL LAW. *Homicide. Instructions.*
   On the trial of an indictment for homicide, it is not error in the court to refuse instructions which make the right to take the life of the deceased dependent upon the belief of the defendant that there is necessity for him to do so to defend himself.

5. PRACTICE. *Instructions not applicable to evidence.*
   An instruction not applicable to the evidence in a case, though it contain principles of law in the abstract, should not be given by the court.

6. CRIMINAL LAW. *Competency of juror. Opinion expressed.*
   Upon a conviction for manslaughter, it is not a good ground for granting a new trial that one of the jury had previously expressed an opinion as to the guilt of the accused, where upon the *voire dire* he stated that he had not heard the evidence, and could do justice in the case, notwithstanding any impressions his mind may have received, and he is accepted by the accused, one of his counsel knowing that the juror had expressed such opinion.

Error to the Circuit Court of Alcorn County.

Hon. J. A. Green, Judge.

A statement of the case will be found in the opinion of the court.

*Inge & Inge*, for the plaintiff in error.

1. Where manifest injustice has been done in refusing a continuance, the appellate court should interfere, and not permit a citizen to be deprived of his liberty without a fair trial. *McDaniel* v. *The State*, 8 Smed. & M. 414; 5 Humph. 568; 2 Va. Cas. 849; 10 Leigh, 692; 4 Humph. 202. In speaking of the court's discretion in the matter of continuances this court says: "Where this discretion has been manifestly abused, the appellate court should reverse." *Lundy* v. *The State*, 44 Miss. 669.

2. The second charge asked for the defendant, which the court refused, simply announces this doctrine: that the mind must have acted and determined to kill before the killing, or it is not murder. This is too plain a legal proposition to require argument. *McDaniel's Case*, 8 Smed. & M. 401; *Hange's Case*, 5 Geo. 616; *Green's Case*, 6 Cushm. 687; *Head's Case*, 44, 731. The fifth instruction asked for the defendant, and refused, announces that if the deceased struck at, or hit, the defendant with a stick, or any missile, and was in striking distance of him, and thereby produced a reasonable and well-grounded belief in the mind of defendant that he was in danger of receiving great bodily harm from the accused, then the defendant was justified in killing the deceased. It is not required that the danger, to justify killing, should be absolute and real. *Reins* v. *The People*, 30 Ill. 256; *Shorter* v. *The People*, 2 Comst. 193; *Loge* v. *The Commonwealth*, 2 Wright, 265; *Campbell* v. *The People*, 16 Ill. 17. The twelfth charge asked for the defendant is certainly the law, and is clearly announced as such in the case of *Long* v. *The State*, 52 Miss. 38.

3. The case should be reversed because of the incompetency of two of the jurors. Both Wright and Jackson had expressed the most bitter feeling towards the defendant, indicating that

they desired him to be hung. They were not impartial jurors. The belief of a juror that he can do justice can have but little weight in determining his competency, if facts show that he has a fixed opinion as to the guilt of the accused. The plaintiff in error did not have such a jury as the Constitution guarantees to him. *Law's Case,* 13 Smed. & M. 189 ; *Lewis v. The State,* 9 Smed. & M. 119 ; *Childress' Case,* 10 Smed. & M. 30.

· *T. C. Catchings,* Attorney-General, for the State.

1. As it appears that the testimony of the absent witness, Suitor, was merely cumulative, the refusal to grant the application for a continuance is no ground for a reversal of the judgment and the granting of a new trial. 8 Smed. & M. 401 ; 52 Miss. 33.

2. The instructions asked by the defendant, and refused, are the same as those given for him, but dressed in different language. And if the instructions given for the state, and complained of, are in any respect too broad, which is not believed, they are sufficiently qualified by the instructions given, as a whole. The instructions are to be construed together, and if it appears that the law was by them, as a whole, correctly expounded, this court will not reverse, although some of them, considered singly, may not state the law exactly. It must appear, before a reversal can be claimed, that injury may have resulted, or did result, to the plaintiff in error, from the action of the court in the premises. *Mark's Case,* 7 Geo. 77 ; *Josephine's Case,* 10 Geo. 613 ; *Head's Case,* 44 Miss. 731. It is not error to refuse instructions asked, when the true principles of law applicable are embraced in others already given. *Evan's Case,* 44 Miss. 762 ; *Darrale's Case,* 44 Miss. 789.

· 3. Although the juror Wright had expressed an opinion as to the guilt of the accused before the trial, yet he was accepted by the defendant when one of his counsel had heard the opinion expressed by Wright.

SIMRALL, C. J., delivered the opinion of the court.

·· The undisputed facts are these : Late Christmas night, 1876,

the plaintiff in error, in company with John M. Suitor and G. W. Stallings, aroused the deceased, Hiram Dilworth, who had retired to bed, and entered his house. The house was a log-cabin with two rooms. Parker went to the door of the room occupied by his daughters, wrenched the door from its hinges, and got into the bed occupied by them. Suitor and Stallings went into the other room, occupied by Hiram Dilworth and his wife. Attracted by the noise and cries of the daughters, Dilworth and wife started for their room, the wife in advance. Seeing the daughters in their night-clothes, standing on the floor, and Parker in the bed, the wife asked what he was doing there. Parker answered, " he was doing as he damned independent pleased." About that time the deceased got into the room, and " told Parker to get out of there," and struck him two or three blows, whilst in the bed, with a stick with which he had been mending the fire. Parker jumped up and ran out of the door. The deceased struck at him as he passed out, but the door-facing caught the lick. When Parker got out of the house, he turned and fired a pistol at deceased, who had stopped and was standing in the door. From the effects of the pistol-shot wound, Dilworth died three days afterwards.

The jury found the accused guilty of manslaughter.

The refusal to grant a continuance on the affidavit of Parker is assigned for error. Perhaps it would be impracticable to frame a rule of universal application on the subject of continuances. The rule laid down in *McDaniel's Case*, 8 Smed. & M. 414, was that a continuance was referred to the sound discretion of the court, and that the appellate court will not interfere with its exercise adverse to the accused " but with reluctance and caution." To warrant a reversal there must be " palpable error, resulting in injustice." In that case the court referred to 5 Humph. 568, where the rule was enforced with great strictness. The rule stated in McDaniel's case was reaffirmed in *Ogle* v. *The State*, 33 Miss. 387 ; *Lundy's Case*, 44 Miss. 675.

In *Long's Case*, 52 Miss. 675, the most weighty considera-

tion that induced this court not to overrule the Circuit Court, in its refusal of a continuance, and the postponement of the case to a later day of the term, was that the facts that would be deposed to by the absent witness were observed by others who were examined. In that respect Long's case is much like this. Four or five witnesses, one of them Suitor, the companion of the accused, who accompanied him to Dilworth's house, testify as to the size of the stick in the hands of the deceased, the blows which he struck, the movements of the parties, and their relative position towards each other at the time the accused fired the pistol. Their opportunities of observation were as good as those of Suitor, the absent witness. In the main the witnesses examined concurred in their statements, which extended to every fact about which Suitor could testify. His testimony was cumulative.

Another matter of weight with this court, in reviewing the ruling of the Circuit Court, is that the entire trial, in all its developments, was reviewed by the Circuit Court, on the motion for a new trial. His honor, the circuit judge, was then able to see clearly and distinctly whether the accused has been damaged, or injustice has been done, by reason of the absent witness. When he rules on the application, he cannot have a full comprehension of what influence the testimony might have on the result. But, in retrospecting the trial, he considers whether the witnesses who were examined were consistent and credible; whether their means of observation were such that they embraced the entire occurrences; and whether they deposed to the same facts about which the absent witness could speak. He can better determine, too, whether the application is made in good faith. · This view of the subject was especially noticed and commented on in *McDaniel's Case, ubi supra*, and was adverted to in *Long's Case, supra*.

The refusal of the continuance was not assigned as a ground for a new trial. It might be inferred that the point was abandoned in the Circuit Court. We have, however, considered it on its merits, as it was much pressed in the briefs of counsel.

The theory of the defense was that the accused took the life of Dilworth in the necessary defense of his own life, or of his person from great bodily harm.   Many requests of charges to the jury were offered by his counsel, embracing a great variety of circumstances of impending or imminent danger to life or person which will justify the sacrifice of the life of the assailant.   Many of these were given; some were refused.

Two requests attempting to define murder, more especially with reference to the intent or premeditated design to kill, were refused.   Without dissecting these last requests, to determine whether good or bad law, it is sufficient for their disposition to say that the withholding of them did no prejudice to the accused.   The jury acquitted him of murder.

After a careful examination of the requests on the point of self-defense which were refused, we are satisfied that the instructions given for the defendant embraced every principle of law applicable to any rational view of the testimony, and every principle contained in the rejected requests.

It has been often repeated in this court that the circuit judge is under no duty to repeat principles of law already fully expounded to the jury; nor ought charges to be given which contain correct rules of law, if inapplicable to the testimony.

For the defendant, the court stated these principles of the law of self-defense:   That if he had reasonable ground to apprehend a design on the part of the deceased to commit a felony or do him some great personal injury, and there was imminent danger of its accomplishment, the jury must acquit.

If the killing was on a sudden quarrel, without premeditated and formed design so to do, it is not murder.

If the deceased struck the accused with a stick, and was within the distance to strike or throw, and accused had reasonable ground of losing his life or receiving great personal injury from the striking or throwing, the jury will

acquit. The eleventh charge is a repetition of two others already given — differing only in a more elaborate statement.

If the defendant was rightfully at the house of deceased, lying in the bed, molesting no one, and the deceased beat him with a stick, endangering his life or the infliction of great bodily injury, and the accused shot to prevent the one or the other, the jury must acquit.

The instructions which were refused covered the same ground; one or more of them are obnoxious to the criticism that the right to take life is dependent on the *mere belief* of the accused in the necessity so to do, omitting the test that the attending circumstances must be such as to create *reasonable cause* to believe that the necessity existed.

The twelfth request, though correct as an abstract proposition, might have been refused as not pertinent to the testimony, and calculated to confuse the jury. The principle had been stated in a concrete form in one or more instructions already given.

The effort to impeach the verdict because the juror Jackson had expressed an opinion unfavorable to the accused entirely failed.

It appears by the bill of exceptions that the juror Wright disclosed on his *voire dire* that he had expressed an opinion, but that he could do justice, without regard to any impressions he may have had, and had never heard the evidence. One of the counsel for the accused stated that he had heard Wright express an opinion the evening before the trial began, and that he accepted him with that knowledge.

Judgment affirmed.