GEORGE COIL V. STATE OF NEBRASKA.

FILED JUNE 5, 1901. No. 11,367.

62   15
62   180
62   625

1. **No Valid Constitutional Objection to Prosecution of Capital Offense by Information.** There are no valid objections, by reason of any of the provisions of the constitution, to the prosecution of one charged with a capital offense upon an information by the county attorney, under the provisions of chapter 54 of the Criminal Code. *Dinsmore v. State*, 61 Nebr., 418, followed.

2. **Where the Record Discloses that the Jury Were Placed in Charge of a Sworn Bailiff, Such Custody Is Presumed to Continue in Absence of Countervailing Proof.** Where the record, in a prosecution charging the defendant with a capital offense, discloses that at the beginning of the trial the jury were placed in charge of a sworn bailiff, and were in charge of a sworn officer at subsequent stages of the trial, and there is nothing to warrant the inference that they were allowed to separate at any time during the trial, and no complaint is made during the trial, nor in the motion for a new trial, an objection, made for the first time in this court, that it is not shown by the record that the jury were kept in charge of an officer, is unavailing.

3. **Juror Having Been Called Within Two Years Ground for Challenge.** It is a good cause for challenge that a juror called to sit in a criminal case has been summoned and served as a juror in the same court within the two years preceding.

4. ——: TALESMEN. The objection is good as to those called as talesmen as well as those summoned on the regular panel.

5. **Right of Challenge May Be Waived.** The right to challenge a juror for the cause above mentioned may be waived or lost if not interposed in apt time, or when there is lack of diligence.

Coil v. State.

6. **Challenge for Cause Subject to Judicial Discretion.** The ruling of a trial court in deciding a challenge for cause will not be disturbed unless an abuse of discretion is shown.

7. **Error Not Presumed.** Errors will not be presumed, but must affirmatively appear from the record.

8. **Bill of Exceptions Not Properly Authenticated, Question Dehors the Record.** Whether the trial court erred in overruling a challenge for cause, on the ground that a juror had been summoned and served as such within two years prior thereto, not interposed until after the juror had been passed for cause, and. when the right to peremptory challenges was being exercised, not determined, because purported bill of exceptions is not properly authenticated.

9. **Voir Dire Examination No Part of Trial.** The certificate of the trial judge to a bill of exceptions "that the foregoing is all the evidence offered by either party on the trial of the cause" is not sufficient to embrace the *voir dire* examination of a juror. *Durfee v. State*, 53 Nebr., 214, followed.

10. **Voluntary Confession of Prisoner Admissible in Evidence.** Statements of a prisoner charged with a crime, in the nature of an admission or confession, voluntarily made, and not induced by hope or fear from those having custody of the prisoner or concerned in the administration of justice, may properly be admitted in evidence.

11. **Error May Be Cured.** Where testimony is offered, objected to, and excluded on the ground that no proper foundation has been laid, and later on the witness is recalled and the proposed testimony received, the first ruling is without prejudice, even though erroneous.

12. **No Prejudicial Error of Record.** Record examined, and found free of prejudicial error regarding the ruling of the court on the admission and rejection of evidence.

13. **Instruction Not Prejudicially Erroneous.** The use of the words "as in sound reason," in an instruction on the law of self-defense, *held* not prejudicially erroneous.

14. **Cowardice No Defense.** It is not error to instruct the jury that one who shoots another through mere cowardice will not be justified on the ground of self-defense.

15. **Instructions On Points Substantially Covered.** It is not error to refuse instructions requested on points substantially covered and included in other instructions given.

16. **Instructions.** Instructions given and refused examined, and *held* to be without error.

17. **Misconduct of Sheriff:** Ruling of Court: Evidence. Ruling of

the trial court as to alleged misconduct of the sheriff during the impaneling of the jury *held* to be supported by the evidence and free from error.

18. **Misconduct of Counsel Not Shown.** *Held, also,* That alleged misconduct of consul for the state calling for a reversal of the case, is not shown.

19. **Verdict With Request Refused:** REQUEST ELIMINATED: NO PREJUDICE. Where a verdict finding a defendant guilty of murder in the second degree, and requesting that the term of imprisonment be not more than five years, is returned, which is not received by the court, and the jury retire and return the same verdict, with the request for a term of not more than five years' imprisonment eliminated, the defendant is in nowise prejudiced and has no legal ground of complaint.

20. **Degree of Punishment in Its Effect upon a Verdict No Ground for New Trial.** Affidavits of jurors to the effect that they believed that the jury could fix the term of imprisonment at five years, or they would not have agreed to a verdict of guilty of murder in the second degree, can not be received to impeach their verdict returned in open court, and assented to by them in a poll of the jury.

21. **Verdict Can Not Be Set Aside Because Juror Misunderstood Witness.** The verdict of a jury can not be impeached by one of the jurors on the ground that he misunderstood the evidence of one of the witnesses.

22. **Affidavits Insufficient.** Affidavits in support of the right, as alleged, of a witness to correct his testimony, *held* without merit, since it appears from the record that no mistake had been made.

23. ————. Affidavits in support of a motion for a new trial, on the ground that a witness for the state was not allowed to correct an alleged mistake in his testimony, and exception to the ruling of the court thereon, *held* without merit, since from the record and the affidavits, it appears that no mistake had been made.

24. **Assignments of Errors.** Other assignments of errors *held* to be not well taken.

ERROR from the district court for Dawes county. Tried below before WESTOVER, J.  *Affirmed.*

*Allen G. Fisher, George A. Eckles* and *Albert W. Crites,* for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown, Deputy,* and *Michael F. Harrington, contra.*

HOLCOMB, J.

The plaintiff in error was informed against in the district court of Dawes county on the charge of murder in the first degree. A trial to the court and jury on the issue raised by a plea of not guilty resulted in a verdict of guilty of murder in the second degree, with a recommendation of leniency in the infliction of punishment by the court. A sentence of imprisonment in the penitentiary for the period of ten years was imposed, the minimum permitted by law. From the verdict and judgment the defendant prosecutes proceeding in error in this court to secure a reversal thereof. A number of alleged errors in the trial of the case are assigned which, in so far as they are deemed essential in reviewing the case, will be noted in the order of presentation.

We have carefully noted each and every error assigned and argued in the brief of counsel for defendant, and a failure to note each in detail is because they are so numerous; an opinion would be extended to an unwarranted length in the discussion of many which are not regarded as of sufficient importance to justify more than a passing notice.

By a motion to quash, plea in abatement, and demurrer, the question is presented of the right of the state to proceed against the defendant upon an information, charging the crime of which he was tried, made and filed by the county attorney, instead of presentment under, an indictment by a grand jury duly returned in the manner provided by law. This question has so recently been considered and passed upon by this court in the case of *Dinsmore v. State,* 61 Nebr., 418, that it is not thought necessary now to more than refer to that case for an exposition of our views on the subject, and the reason for holding against the contention of defendant's counsel regarding the matter in the case at bar. There are no valid objections, by reason of any of the provisions of the constitution, to the prosecution of one charged with a

capital offense, upon an information by the county attorney, under the provisions of chapter 54 (secs. 578-585) of the Criminal Code.

It is next urged that it is not shown by the record that the jury called to try the case was kept in charge of an officer during the trial. An examination of the record discloses that upon the first adjournment, after the impaneling of the jury began, they were placed in charge of a sworn bailiff, and thereafter, during the entire proceedings, until the verdict of the jury was returned and they discharged, they were, while not in open session of the court, in the charge of an officer of the court. There is nothing in the record to warrant the inference that the jury were allowed to separate at any time during the progress of the trial, no indication that the defendant has in this respect been in anywise prejudiced, no complaint made during the trial, nor in the motion for a new trial, and the objection is now unavailing and without merit. *St. Louis v. State,* 8 Nebr., 405; *Polin v. State,* 14 Nebr., 540.

It is further contended that error was committed by the court in overruling a challenge for cause interposed by the defendant to a juror named Hilbert, called to sit in the case. From the purported record before us it is made to appear that the said juror was called into the jury-box, examined by counsel for both the state and the defendant, and by each was passed for cause. Thereafter, and when some of the peremptory challenges allowed each of the parties had been exercised by the state and by the defendant, leave was asked by the defendant's counsel, and granted by the court, to further examine this juror for cause. It was thereupon by such examination disclosed that the said Hilbert had been summoned and had served as a juror in the district court of that county within two years next preceding the time he was summoned to sit in the case at bar. The defendant challenged the juror for cause. The state resisted the challenge "for the reason that the juror was passed for cause,

and since he was passed the state has been required to exercise two of its peremptories." The court overruled the challenge, to which ruling defendant duly excepted, and assigned the ruling as one of his grounds for a new trial. The ruling, it is argued, is error with prejudice to the defendant. Whether the court erred in overruling the challenge is dependent on the question of the defendant having waived or lost the right to challenge the juror for cause when he was examined on his *voir-dire* examination and passed without objection being raised as to his qualification to sit in the trial of the cause. The right of a defendant to challenge a juror in either a civil or criminal cause, on the ground that he has been summoned and served as such in the same court within the two preceding years, must be conceded without discussion. The right is given by statute, has been confirmed by the decisions of this court and is held to extend to those who have been called to serve as talesman as well as those summoned on the regular panel. Code of Civil Procedure, sec. 665; Criminal Code, sec. 468; *Northeastern N. R. Co. v. Frazier*, 25 Nebr., 42, 48; *Wiseman v. Bruns*, 36 Nebr., 467, 468. A defendant may waive his right to interpose challenge on the ground stated, and will be held to have absolutely waived the right unless the objection is presented before the jury is sworn. This is made so by statute. Whether he will be deemed to have waived the right or allowed to interpose a challenge after he has examined and passed a juror for cause must, we think, rest upon the circumstances of each particular case and to a degree rests unquestionably in the sound discretion of the trial court. The proceedings being under the control and direction of the court, an orderly presentation of all matters for consideration and action requires that the successive steps be taken one after the other in regular order until the cause is finally disposed of, and that when one stage of the case has been passed it be not gone over again, except for sufficient reason. If a challenge for cause is not presented in apt time, or if a party has

been lacking in diligence in discovering the causes for challenge, it would seem very proper to hold him to have lost the right when subsequent to the proper time a challenge is sought to be interposed. It is quite probable also that the nature of the objection to the juror may have some bearing in determining the propriety of a ruling disallowing it. If a juror is manifestly unfair, or is disqualified for reasons which would ordinarily influence his conduct as a juror to the prejudice of one of the parties, by all means the utmost latitude consistent with regularity of proceedings should be given to a challenge for cause, in order that a fair and impartial jury may be secured. Where the ground of objection is more technical than substantial, the reason for relaxing the method of procedure is not so cogent. Ordinarily it is said "the ruling of a trial court in deciding a challenge for cause will not be disturbed, unless an abuse of discretion is shown."

Whether the facts and circumstances in the case at bar render the overruling of the challenge proper or the reverse, must be answered by an examination of the record to ascertain whether sufficient cause existed or is shown for the interposition of the challenge after the juror had been passed and the parties were engaged in the exercise of their right to challenge peremptorily the number allowed by statute of those called to sit in the case. The error alleged will not be presumed. Before the defendant can rightfully claim a reversal on the ground advanced, it is incumbent upon him to present a record from which it appears affirmatively that the court erred and abused its discretion in regard to the ruling complained of. This is an elementary rule of practice in the review of proceedings, both civil and criminal in their nature. As presented in the record before us, we are wholly unable to ascertain therefrom the reason why the defendant's counsel did not interpose the challenge at the time the opportunity arose and the examination of the juror as to his qualifications was engaged in. Whether he had knowledge of a cause existing for a

challenge or made any reasonable effort to inform himself or omitted to inquire regarding the matter through caprice or for some unknown purpose does not appear. Nor did he offer any explanation or advance any reason why the challenge was not sooner and in more appropriate time interposed. In the absence of any showing of diligence or explanation of a reason for not making the objection in apt time and before passing the juror for cause, and in view of the presumption of the correctness of the ruling of the trial court, the question, perhaps, should be disposed of on the proposition that error and abuse of discretion is not made to appear affirmatively by the record before us. We do not, however, directly decide the point, because the defendant has failed to present us a properly authenticated record which can avail him as a bill of exceptions containing the evidence and the rulings of the court relating to the impaneling of the jury and their *voir-dire* examination, by which their qualifications to try the issue may be determined.

In *Durfee v. State*, 53 Nebr., 214, it is held in the second paragraph of the syllabus: "The certificate of the trial judge to a bill of exceptions 'that the foregoing is all the evidence offered by either party on the trial of the cause' is not sufficient to embrace the *voir-dire* examination of a juror, or the evidence adduced on the hearing of a challenge to the whole panel or array of jurors." Says Norval, J., in the opinion, in speaking of this form of the certificate: "This is insufficient to show that the bill of exceptions contained either the testimony on the hearing of the challenge to the panel, or the *voir-dire* examination of the jurors. Those matters did not occur during, but preceded, the trial." The rule thus announced was reiterated in the case of *Dinsmore v. State, supra,* very recently decided by this court. In the present case the certificate of the trial judge settling the bill of exceptions is as follows: "Now, I, the said judge, do hereby certify that this bill of exceptions contains all the testimony adduced or offered by the plaintiff and defendant on the trial of said

cause, all of the objections to the admission of testimony, all the rulings of the court on such objections, and all of the exceptions taken to such rulings at the time," etc. The certificate does not embrace the proceedings had and taken in impaneling the jury to try the case, and its insufficiency becomes at once obvious under the rule announced.

Numerous objections are urged to the admission and rejection of certain of the evidence received and offered in the trial of the cause, some of which will be noted. Regarding much of the evidence received, to which objections are made and argued in this court, we find that when offered and during the trial no objections were offered or exceptions taken; and it is now too late to have the same properly presented for review. As to all such we have not taken the time to examine the evidence or the grounds of objections.

A witness, Anna E. Rhyan, was allowed to testify as to statements made by the defendant to her while he was confined in the county jail awaiting trial. The sheriff was also present and gave testimony regarding the same statements. It is contended that the statements should be regarded as made under coercion and that no sufficient foundation was laid, inasmuch as it is not shown that the defendant knew or was told that the statements would be used against him. The objection is not well grounded. It is clearly shown that the statements were entirely voluntarily made and without inducement of hope of reward or fear of punishment. It is not required that he be informed that the statements would be used against him. Declarations or admissions against interest would be of little or no practical value if it were necessary to advise those making them that the statements could be used against them, before being admissible as evidence.

Objection is also made because the testimony of a witness was excluded as to alleged threats made by the deceased and coming to the knowledge of the defendant, on

the ground that no proper foundation had been laid. The witness was re-called later on and testified regarding the same statements first inquired about, which cured any error, if any existed by reason of the ruling complained of.

Other similar objections are presented for consideraiton, but we find in them nothing prejudicing the substantial rights of the defendant. He has no meritorious ground of complaint on account of the admission or rejection of the evidence offered during the trial of the cause.

The defendant justified the homicide, which was admitted, on the ground of self-defense. On this point, by the 16th instruction, the jury were told: "The jury are instructed that in this case the defendant sets up the plea of necessary self-defense. The rule of law on the subject of self-defense is this: Where a man in the lawful pursuit of his business is attacked, and where from the nature of the attack there is reasonable ground to believe that there is a design to take his life, or to do him great bodily harm, and the party attacked does so believe, then the shooting of the assailant under such circumstances will be excusable or justifiable although it should afterwards appear that no injury was intended, and no real danger existed. The jury are instructed that if they find from the evidence and believe that at the time the defendant is alleged to have shot said Thomas E. Rhyan, the circumstances surrounding the defendant were such as in sound reason would justify or induce in his mind an honest belief that he was in danger of receiving from the said Thomas E. Rhyan great bodily harm, and that the defendant in doing what he then did was acting from instinct of self-preservation, then he is not guilty although there may in fact have been no real or actual danger." An exception was taken to this instruction and it is here argued that because of the language, "as in sound reason," the instruction is erroneous; that the word "sound" when applied to the word "reason," as a

qualifying adjective, is an incorrect statement of the law. While it is possible that the word is not the most apt in expressing the law applicable, yet upon the whole, the impression conveyed is substantially correct if not exactly accurate. The rule, as we understand it, is that the threatened danger, real or apparent, must be such as to induce a reasonable and well-grounded belief that one's life is in peril, or great bodily harm impending, before the act of taking life can be justified on the ground of self-defense. *Vollmer v. State*, 24 Nebr., 838; *Darling v. Williams*, 35 Ohio St., 58; 1 Bishop's New Criminal Law, sec. 865. By an examination of the entire instruction the law, we think, is announced substantially as approved by well recognized authority. In the first part of the instruction it is stated that a reasonable ground for the belief must exist, and in the latter part the phrase "sound reason" is equivalent to saying that the reasoning powers must be exercised honestly and in good faith, leading to a conviction of the threatened danger which is actual and substantial, before a person will be excused or justified for a homicide on the ground of self-defense.

Another instruction excepted to is as follows: "The court further instructs the jury that if a person shoots another through mere cowardice, or under circumstances which are not, in the opinion of the jury, sufficient to induce a reasonable and well grounded belief of danger to life, or of great bodily harm, in the mind of an ordinarily courageous person, the law will not justify the shooting on the ground of self-defense." The instruction correctly states the law. "Cowardice" is an antonym of "courage." The rule is that a defendant is excusable if he does nothing more than a reasonably prudent and courageous man would have done under like circumstances. *State v. Crawford*, 66 Ia., 318, 321. A person under such circumstances is excusable if he acts as an ordinarily prudent and cautious man would have done under the same circumstances. There must be a reasonable cause for a belief in the existence of the facts relied on to justify the

homicide on the ground of self-defense, and not one founded on mere cowardice. 1 Bishop's New Criminal Law, sec. 305, and cases cited.

Other objections to the giving of certain instructions are presented, which we have considered, and hold to the view that they are not well taken. We find it inadvisable to treat them in detail.

Certain instructions were requested by counsel for defendant, and refused, to which exceptions are taken. We find no error in the rulings of the court in respect thereto. In most of these instructions the court had, on its own motion, or at the request of the defendant, covered substantially the same point; and the giving of other instructions would have been in the nature of a repetition and, therefore, not required. We are of the opinion that, upon the whole, the case was fairly submitted to the jury by the instructions, which were as favorable to the defendant's theory of the case as he might rightfully ask. We find no prejudicial error in the giving and refusal to give any of the instructions of which complaint is made.

On the motion for a new trial several matters were presented to the court, such as misconduct of the sheriff and of counsel for the state, and, also, with reference to the deliberations of the jury, by which it was attempted to impeach their verdict. Regarding the alleged misconduct of the sheriff complained of an effort was made after verdict, by affidavits, to show that he was prejudiced against the defendant, did not in summoning jurors act impartially but in such manner as to prejudice the defendant and preclude a fair and impartial trial. Counter affidavits were filed. As a question of fact, the court rightly ruled in favor of the state. Had the defendant or his counsel really believed that the sheriff was prejudiced against him, and would not act impartially as an officer of the court in the proceeding, the law furnished him an easy method of securing one to whom no valid objection could apply. Compiled Statutes, 1899, ch. 18, art. 3, sec. 16. Not having done so, the latter effort to show his dis-

qualification may properly be regarded as a desperate effort to escape the consequence of the verdict returned by the jury, rather than as establishing that a sworn officer of the court had been derelict in his duty which prevented him from having a fair trial. Misconduct of counsel for the state is also claimed, but we find no such departure from the rules of propriety as would work a reversal of the case.

By affidavits it is sought to be shown that the court refused to receive a verdict finding the defendant guilty of murder in the second degree, commending him to the leniency of the court and requesting that the term of imprisonment be not more than five years; and directed the jury to retire for further deliberation. By the record it is shown that the same verdict was returned, received and filed, except the request for a five year sentence. Conceding that the first verdict should have been received and filed as claimed, no error was committed, the second verdict in legal effect being identical. The jury could not fix the sentence. That was a matter solely for the court, within the limits of the law. The court could give such consideration as it regarded as warranted to the recommendation and request of the jury for leniency. By the defendant's own showing, he was in nowise prejudiced by the action complained of.

The affidavits of two of the jurors trying the case, were presented in the motion for a new trial, the purport of which was that they believed the defendant innocent, but because of the cost of another trial, if the jury did not agree, and the likelihood of defendant being kept in jail for a long period of time awaiting another trial, and believing that the jury could fix the term of sentence, they agreed to a verdict of guilty of murder in the second degree, in which the jury fixed the sentence at five years in the penitentiary, and that they did not agree to the verdict as finally returned. These affidavits were on motion stricken from the files as an unauthorized attempt of the two jurors to impeach their own verdict. The rec-

ord in the case belies the affidavits of the two jurors. It not only shows that the verdict was returned into open court and received in the presence of the jury, but also that the jury was polled, each for himself answering that it is his verdict. The question of the length or duration of the term of sentence under the verdict of guilty was of no concern of the jury. It was not for them to act on or determine any question regarding that matter. It is entirely immaterial how they regarded the sentence which might be imposed. As triers of fact they were to determine whether the defendant was guilty of either of the degrees of homicide included in the information, or neither, and return a verdict corresponding to the conclusion reached. When that question was determined the function of the jury ceased. Resort to another power must be had for the imposition of a sentence on the verdict.

Can a juror be heard to say that the verdict he returns under the oath he has taken to well and truly try and true deliverance make, and which in open court he solemnly declares is his, is not in fact his verdict and that he did not agree or consent to it? Can he be permitted to declare in his verdict that a defendant is guilty of the crime charged, and subsequently in an affidavit that he is not guilty because he (the juror) was not correctly informed as to the sentence the law authorized to be imposed? We think not. If such can be done, judicial proceedings rest upon a very insecure foundation. "It is," says REESE, C. J., in *Harris v. State*, 24 Nebr., 803, 809, "the well established rule of law, as held in all courts, so far as we know (unless the rule be changed by statute), that affidavits of jurors will not be received for the purpose of impeaching or avoiding their verdict in respect to a matter which essentially inheres in the verdict itself, as that the juror was mistaken in a computation, or misunderstood a witness, or did not comprehend the instructions of the court." A juryman will not be permitted to testify that he was misled by the form of the verdict and

Coil v. State.

would not have signed it had he known its real meaning. *State v. Burwell*, 34 Kan., 312. Affidavits of jurors as to their understanding of the verdict they rendered or were to render, can not have the effect to impeach their verdict. *United States v. Daubner*, 17 Fed. Rep., 793. A juror will not be allowed to impeach his verdict by his affidavit that he would not have found the defendant guilty if he had known that the punishment fixed by law for the crime charged was death. *State v. Shock*, 68 Mo., 552. Says the author of the opinion in the case last cited: "In support of the motion for a new trial an affidavit of one of the jurors was filed, which stated in substance, that while the jury were considering their verdict, he was of the opinion that the case was not one in which capital punishment should be inflicted, but he was induced to believe that the court had the power to inflict a less degree of punishment; that he and others of said jury were opposed to rendering a verdict in said case that would result in the death of the defendant. It will be sufficient to say on this point that a juror will not be allowed to impeach his verdict on the ground that he would not have found the defendant guilty if he had known that the punishment fixed by law for the crime charged was death. The nature of the punishment had nothing to do with the guilt or innocence of the defendant." See also *State v. Doon*, R. M. Ch. [Ga.], 1; *State v. Senn*, 32 S. Car., 392; Thompson & Merriam on Juries, sec. 440, and cases there cited. The court, we think, committed no error in striking from the files the affidavits of the two jurors, as they came entirely within the rule prohibiting a juror from impeaching his own verdict by affidavit.

Lastly, complaint is made because, as alleged, a witness who had testified in the case was not allowed by the state to correct his testimony, he having, as claimed, made an erroneous statement while on the witness stand which he afterward asked to be allowed to correct, and which, it is claimed, had great weight with the jury in arriving at their verdict. A careful reading of the record dispels

Coil v. State.

any doubt which might at first arise regarding the matter. The affidavits in support of the contention seem to confirm an impression received from reading other portions of the record, that many of the affidavits in support of the motion for a new trial were made with extreme recklessness and without due regard to the truth, the evidence being to discredit the showing made in support of the motion for a new trial. The defendant testified regarding the deceased having, as alleged, shot at him and mentioned one Griffith as one of the persons with whom, he believed, he had talked about the subject. The object of the testimony is not perfectly clear. The state called Griffith and asked him if he had told the defendant that the deceased had told the witness that deceased had shot at the defendant; and the witness answered in the negative. On cross-examination the witness was asked if the defendant or his mother had not told him that the deceased had shot at defendant; this was properly ruled out as incompetent and hearsay. In his affidavit the witness is made to say that he testified that Frank Coil had told him about the deceased having shot at the defendant, George Coil, and that if he did so testify, he was mistaken; and that it was the defendant and his mother who told him. The witness had not so testified and there was no correction to make. If the jurors misunderstood the testimony of the witness, that is no ground for a new trial, nor can their affidavits be received to impeach their verdict by reason of such misunderstanding. *Harris v. State, supra.*

Other assignments of error, not noted specifically, are found to be not well taken.

We find no error in the record, and the judgment is accordingly

AFFIRMED.

NOTE.—A state law which provides for the prosecution of a felony by information by the public prosecutor, instead of indictment by a grand jury, is not contrary to the fifth and fourteenth amendments of the constitution of the United States. *State v. Nordstrom,* 7 Wash.,

506, 35 Pac. Rep., 382; *Hurtado v. California*, 110 U. S., 516; *Hawkins v. State*, 60 Nebr., 380. To justify homicide in self-defense, the fear of death or great bodily harm must be well founded. *Barnards v. State*, 88 Tenn., 183. If the killing is the act of a timid man who fears an assault and battery, it is manslaughter. *Grainger v. State*, 5 Yerger [Tenn.], 458.—REPORTER.