FRED M. HANS V. STATE OF NEBRASKA.

FILED JULY 13, 1904.   No. 13,486.

1. **Criminal Law:** INSTRUCTIONS. Upon the trial of an indictment for murder in the second degree the defendant is entitled to a plain and correct statement from the court to the jury of the charge against him. An instruction purporting to state the offense for which he is being tried which omits material elements of the offense charged in the indictment is erroneous.

2. ——: ——: SELF-DEFENSE. When, in a trial for murder, the defendant produces evidence tending to justify the killing on the ground of self-defense, an instruction which limits the right of self-defense to one in the lawful pursuit of his business is erroneous.

ERROR to the district court for Brown county: JAMES J. HARRINGTON, JUDGE. *Reversed.*

*Gurley & Woodrough* and *A. W. Scattergood*, for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* contra.

Hans v. State.

SEDGWICK, J.

The defendant was tried in the district court for Brown county upon an indictment of the grand jury which charged him with the crime of murder in the second degree. In support of the charge, which contained the usual words, "but without premeditation and deliberation," the trial court, over the objection of the defendant, permitted evidence tending to show a conspiracy on the part of the defendant, with other persons, to murder the deceased, and also evidence of the doings and sayings, in the absence of the defendant, of his supposed conspirators; in other words he permitted the prosecution to try the case in all respects as though the defendant had been charged with deliberation and premeditation in committing the crime, and had entered into a conspiracy with divers other persons, the result of which was the murder for which he was being prosecuted.

The court also in instructing the jury stated to them the charge against the defendant upon which he was being tried, which charge purported to give the language of the indictment. It was first written upon a typewriter and contained the words "without deliberation and premeditation," found in the indictment. The court erased those words, thus expressly telling the jury that the defendant was charged with the crime of murder in the first degree, and withdrawing from the jury the information that the state had admitted in the most solemn form that the defendant had not used deliberation and premeditation, and therefore could not have conspired with others to commit the crime. Of course, such a conviction cannot be sustained. The defendant was entitled to have the jury plainly and correctly told the nature and legal effect of the charge that had been made against him upon which he was being tried, and this is especially true when the nature of the charge itself precluded the possibility of the existence of conditions peculiarly pre-

22

judicial to the defendant, conditions which the state strenuously insisted existed, and which the defendant strenuously denied.

Ordinarily competent evidence that tends to prove a material fact in issue is not rendered incompetent by the fact that it tends to prove more than is necessary to support the indictment, but this rule has no application in a case like this. The error in this proceeding is not predicated upon the proposition that, although the evidence tended to prove the malicious killing of the deceased, it was rendered incompetent simply because it tended likewise to prove deliberation and premeditation. In this case, the state solemnly admitted that there was no deliberation and premeditation, and this fact was not only purposely withdrawn from the jury, but the case was in all respects tried as though no such admission had been made.

In *State v. Boyle,* 28 Ia. 522, the indictment failed to charge deliberation. For that reason it was held insufficient as a charge of murder in the first degree. The trial court, however, considered it sufficient for that purpose, and tried the defendant upon that theory. The jury found the defendant guilty of murder in the second degree, which was sufficiently charged in the indictment. It was held that to try the defendant as though he were charged with murder in the first degree, when the indictment was insufficient for that purpose, was prejudicial to the defendant, and although he was convicted of murder in the second degree only, which was sufficiently charged, the judgment could not be sustained.

In so ruling the court followed and approved the case of *State v. Tweedy,* 11 Ia. 350. In that case the defendant was put upon trial for a crime of which he had been acquitted upon a former trial, and was convicted of a lesser crime, and the court held that the conviction could not stand, because of the fact that he was erroneously tried for the greater offense. These cases are not precisely in point here, but, for similar reasons, the error in

the proceedings in the present case is much more mani-
fest.

2. The court instructed the jury: "Where a man in
the lawful pursuit of his business is attacked, and where
from the nature of the attack, there is reasonable ground
to believe that there is a design to take his life, or to do
him great bodily harm, and the party attacked does so
believe, then the shooting of the assailant under ,such
circumstances will be excusable or justifiable, although it
should afterwards appear that no injury was intended
and no real danger, existed." The vice of this instruction
will be more apparent upon consideration of the condi-
tion of the evidence in this case. The defendant insisted,
that he had been deputized by the sheriff to arrest the de-
ceased, and that he was at the time therefore in the "law-
ful pursuit of his business." The state as strenuously in-
sisted that he was not properly deputized, that the at-
tempted appointment by the sheriff gave him no authority
whatever, and that he was therefore a trespasser and not
in the lawful pursuit of his business. In this condition
of the evidence, this instruction informed the jury that,
if they should find that the defendant was not properly
deputized, then they must find that he was not entitled to
the right of self-defense, which clearly is not the law. A
trespasser may defend himself against murder, and the
fact that a man may be upon another man's premises, and
that he may mistakenly suppose that he is acting law-
fully, will not justify the taking of his life.

It is said that this instruction is approved in the case of
*Coil v. State*, 62 Neb. 15. It is true that a similar
instruction was given in that case and that the conviction
was affirmed. Whether the rule announced in that case
should be approved, or should be repudiated, is not now
the question, as this case is clearly distinguishable.
There was no question raised, in the case referred to, as
to whether the defendant was or was not in the lawful
pursuit of his business at the time of the homicide, and
there was possibly no danger that the jury might suppose

that the defendant was placed in a position where he had no right to avail himself of the law of self-defense. The question here discussed was not insisted upon. And again, there was in the instruction given in that case a plain, comprehensive and correct statement of the defendant's right of self-defense under the particular circumstances disclosed by the evidence. In the case at bar the court gave further and more particular instructions as to the right of self-defense under the facts in evidence, but that right was made to depend upon the defendant's having actually arrested the deceased immediately before the killing, which was a disputed question, and the court refused a requested instruction which correctly stated the law.

3. Many other errors are assigned in the petition in error in this case, but as there must be a new trial, it is not thought advisable to discuss them.

For the reasons above given, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

HOLCOMB, C. J., dissenting.

I am of the opinion that the charge of the court fairly stated the material elements of the offense, for the commission of which the accused was indicted, and that the jury could not possibly have been misled, nor the defendant prejudiced by reason of its failure in its first instruction to reiterate the words found in the indictment, wherein after charging an unlawful and malicious killing there is added: "but without premeditation and deliberation." There is nothing in the transcript indicating any erasures in the instruction, although defendant's counsel in their briefs say such is the fact. I do not, however, regard this as in anywise material nor as affecting the question under consideration. If instructions are to be condemned because of erasures or interlineations, then

but few would stand the test if rigorously applied. The real question is whether the instructions as given are prejudicial to the substantial rights of the accused. The indictment charged that the killing was done unlawfully, purposely and maliciously, but without premeditation and deliberation, and this was the basis of the prosecution and of which defendant and the jury were fully informed. The phrase "but without premeditation and deliberation" was certainly not such a solemn admission as would preclude the admission of any evidence tending to prove the crime charged, even though such evidence may have also had a tendency to establish murder in the first degree. The most that can be said is that the indictment, as returned, charged murder in the second degree and negatived a charge of the higher crime. Under the indictment, the defendant, on the evidence, could not be found guilty of a greater crime than murder in the second degree. This is all he was tried for and what he was found guilty of. The Iowa cases are not in point, because in each of them the accused was attempted to be charged and was tried for a crime for which a verdict of guilty could not be legally returned and sustained under the indictments. In these cases the defendants were compelled to, and did, defend in a prosecution for crimes of which they were not legally charged. Manifestly such proceedings are erroneous, even though a verdict of guilty of a lower crime and one which is sufficiently charged be the result of the trial.

The question, as it seems to me, resolves itself into one of whether, when one crime is distinctly and legally charged and the person is being prosecuted for it, evidence may be introduced which, while tending to prove the crime charged or some essential ingredient thereof, may also tend to prove another crime of which he is not charged, and the authorities, so far as my examination extended, are unanimous that such may be done. *Hope v. People*, 83 N. Y. 418, 427; *State v. Folwell*, 14 Kan. 105, 109; *State v. Adams*, 20 Kan. 311, 319. Any evidence tending

to show that the accused conspired with others to kill the deceased, or which is connected with, or has a bearing on the acts resulting in the alleged killing and which tends to prove plans, methods, or arrangements entered into, with a view to the commission of the crime charged, are certainly material for the purpose of showing that a malicious killing was consummated, even though the tendency of such evidence may also be to prove that there was premeditation and deliberation.

In the first paragraph of the instructions given the jury, it is said the indictment charges in substance that the accused did unlawfully, purposely, feloniously and maliciously kill the deceased. In the second paragraph, section 4 of the criminal code is quoted wherein it is declared: "If any person shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree." In instruction 4 the jury were told that the indictment charges the defendant with the crime of murder in the second degree, which is a violation of section 4 of the criminal code which has been set out in paragraph 2 of the instructions. By paragraph 6 the jury were told that the following material facts were necessary in order to constitute the crime of murder in the second degree: First, the time and place as charged; and second, that the killing was done purposely, unlawfully, feloniously and maliciously. With these instructions before the jury, I cannot conceive how the defendant could have been prejudiced, how the jury could have been confused, or how it can be said that material elements of the offense charged are omitted in the instructions. The failure to use the statutory phrase "but without deliberation and premeditation" is not, as I view it, an omission of an essential element necessary to constitute murder in the second degree. The words are used in the statute for the purpose only of differentiating between the lesser and greater crime. If deliberation and premeditation is charged, it constitutes murder in the first degree; and if omitted, the

offense charged cannot be greater than murder in the second degree. To charge murder in the second degree by charging the essential elements—malice, purpose and unlawful intent—and thereafter to add the phrase "but without premeditation and deliberation," is but to amplify the charge and adds no essential ingredient to the crime. Murder in the second degree is included in every charge of murder in the first, and the crime exists whether there is or is not premeditation and deliberation. I am of the opinion, therefore, that the instructions of the trial court cannot rightfully be condemned for the reasons given in the majority opinion.

The instruction regarding the law of self-defense is of approved form and has been in general use in the trial courts of this state for many years. It is, I think, undoubtedly the law, and rests upon sound principles in criminal jurisprudence. Of course, the instruction when given must be applicable to the evidence in the particular case. It is approved in *Hoy v. State,* 69 Neb. 516; *Coil v. State,* 62 Neb. 15; *Carleton v. State,* 43 Neb. 373. The principle to be deduced from the instruction is recognized and given expression in *West v. State,* 59 Ind. 113; *Parker v. State,* 55 Miss. 414, and *Kennedy v. Commonwealth,* 14 Bush (Ky.), 340. The rule is stated in Bishop, Criminal Law, sec. 865, thus:

"If one who is assaulted, * * * being himself without fault in bringing on the difficulty, reasonably apprehends death or great bodily harm to himself unless he kills the assailant, the killing is justifiable." And in 1 McClain, Criminal Law, sec. 311, it is said:

"One who is not in fault, and is in a place where he has a right to be, may, without retreating, resist an attack which reasonably appears to imperil his life or threaten him grievous bodily harm, and take the life of the aggressor if necessary."

It seems to me manifestly an unsound doctrine to hold that a trespasser, or one who by his own fault and wrongdoing invites resistance to his unlawful acts, may avail

himself of the law of self-defense to the same extent as
one who in the peaceful pursuits of his legitimate busi-
ness is unlawfully attacked by another.   The instruction
given is strictly applicable to the evidence in the case.
Had the court assumed that the accused was a trespasser
and given a proper instruction as to his right to avail
himself of the law of self-defense, under such circum-
stances he would have been here complaining, and with
good right to complain, because his case was not sub-
mitted by instructions fairly applicable to the evidence
introduced in the case.   It is the theory of the defense
that, while serving a legal process for the arrest of the
deceased, he was suddenly assaulted by the deceased with
a gun in such a manner as to induce in him a reasonable
belief that his life was in imminent peril and that the
deceased was killed in resisting such attack and purely
in self-defense.   In this view of the case, the instruction
was altogether appropriate and in response to the de-
fendant's evidence introduced on the subject.   On the
other hand, the state sought to show that the use of the
process and the alleged effort to arrest the deceased was
simply a ruse and subterfuge and a pretext resorted to
for the purpose of shielding the defendant from the con-
sequences of the commission of a heinous crime.   Whether
or not the process under which the defendant claimed he
was acting invested him with legal authority to make
an arrest was wholly immaterial save as it threw light
on the contentions of the respective parties.   No question
of resisting of unlawful arrest was in the case.   There
is no evidence in the record tending to prove that an
illegal arrest was resisted by the deceased because of its
illegality, or that the authority, or lack of it, by the de-
fendant to make an arrest in any manner contributed to
the causes which led to the commission of the homicide.
If, according to the defendant's theory, he was endeavor-
ing to arrest the deceased and in good faith to execute the
process in his hands, and while so doing was assaulted by
the deceased in the manner testified to, then the killing

was justified even though, as an abstract legal proposition, the process under which he acted was not such as to constitute him for the time being a special officer, legally authorized to make the arrest. On the other hand, if the use of the process was only for the purpose of shielding him from the consequences of the crime, no arrest in fact being attempted, and he killed the deceased without provocation or justification, as is contended by the prosecution, then the question of the legality of the authorization of the defendant as a special officer to serve the process becomes wholly material. The issue of fact which the jury was called to pass upon was whether the accused shot the deceased purposely, wilfully and maliciously, or whether the homicide was committed in resistance to an assault made by the deceased on the accused, of such a character as to lead him to believe that his life was in imminent peril or great bodily harm threatened. The question here being considered is, I think, fully covered by the instructions of the court to the jury, wherein, after stating what is required to make a legal appointment of a deputy sheriff or to constitute a special officer for a particular purpose, it is stated:

"But you are further instructed that if you find that the defendant had no authority to arrest the deceased, David O. Luse, nevertheless, if you find that he did in truth and in fact arrest the deceased, and that said deceased submitted to such arrest, and subsequently took hold of a gun and turned it upon the defendant in a threatening manner, and in such a way as to make the defendant honestly believe that he was in imminent danger of losing his life, or of receiving great bodily harm, then the defendant under the law would have the right to even take the life of the said David O. Luse, if he honestly believed that the taking of the life of the said David O. Luse was necessary in order to save his own life or to prevent himself from receiving great bodily harm." It is, therefore, apparent that the authority of the defendant to make the arrest, if he did undertake to

make one, became an immaterial question and could not have influenced the finding of the jury against him. The jury must have given him the benefit of the law of self-defense as though he was lawfully at the home of the deceased, but found against him on the ground that the killing was wilful, wanton and malicious and without legal justification. Had the accused desired more specific instructions than those given, or to fit some theory of the case regarding which there was competent evidence to support, it was his duty to have drafted a suitable instruction with the request that it be given with the general charge. It is manifest that an instruction on the theory that the accused was a trespasser and was unlawfully attempting to arrest the deceased and was seeking to avail himself of the right of self-defense under such circumstances would be more unfavorable to him than those given by the court on its own motion. The defendant could not invite by an unlawful act resistance from the deceased and then be permitted to avail himself of the law of self-defense to the same extent he would if he were not at fault. If he were in fact a trespasser, then it would have been his duty to decline to enter into the strife. The right of self-defense, it is true, would not be lost to him because he was the first wrongdoer, but it would be his duty to withdraw from the difficulty, if opportunity so to do occurred, and only resist the assault of the deceased without retreating, when it was of so sudden and perilous a nature as to afford no opportunity to decline and where he could not retreat with safety. It is only in the latter case that the greater wrong of the deadly assault is upon his opponent and which justifies him in slaying the assailant in self-defense. *People v. Hecker,* 109 Cal. 451. The rule of self-defense is found in the law of necessity. The plea of necessity is a shield only for those who are without fault in occasioning it and acting under it. No man can by his own lawless acts create a necessity for acting in self-defense and thereupon killing the person with whom he seeks the difficulty, interpose the plea of

self-defense.  No doubt, a person may actually and *bona fide* withdraw from a strife of his own seeking and thereafter, if attacked, if he is without fault, resist the attack and avail himself of the plea of necessary self-defense.  It is argued that *Hoy v. State, supra,* lays down a rule regarding self-defense contrary to the one given by the court in the case at bar.  In this counsel are in error.  It is true, it is there announced that the right of self-defense does not belong alone to persons engaged in their lawful business, and is available to every person regardless of the nature of his business who is assaulted, or who upon just grounds apprehends an immediate unlawful attack.  The instruction does not limit the right of self-defense to those engaged in the lawful pursuits of their business.  It declares only that such persons, that is, those without fault on their part and who are unlawfully attacked, may avail themselves of this defense to the fullest extent.  Instead of condemning the instruction, the court approves it.  The instruction is identical with the one under consideration.  It is said in the opinion: "We do not condemn the instruction.  When read in connection with the seventh paragraph of the charge it is probably not misleading."  In that case, the evidence all conclusively established the fact that the assaulted parties were trespassing on lands of another, and it further appeared that they were endeavoring to escape when assaulted.  Under such circumstances, the right of self-defense was available even though they were at the time engaged in such unlawful act.  The instructions in that case, when considered together, were deemed to have properly submitted to the jury the question of self-defense.  Regarding other alleged errors assigned as grounds of reversal, I have neither examined nor considered them, and can therefore express no opinion thereon.  It would be productive of no good results for me alone to consider them.  I cannot believe, from an examination of the record relative to the points considered in the majority opinion, that any substantial right of the

accused has been disregarded or trampled upon, nor that, for the reasons given, he should be relieved of the punish-ment meted out to him by the trial court, and which, under the verdict of the jury and the evidence, he so richly deserves.